Exhibit BB

Approved, SCAO

Original - Court
1st copy - Law enforcement agency (file) (green)
2nd copy - Respondent (blue)

3rd copy - Petitioner (pink)
4th copy - Return (yellow)
5th copy - Return (goldenrod)

| STATE OF MICHIGAN 14TH JUDICIAL CIRCUIT MUSKEGON COUNTY | (A) | PERSONAL PROTECTION ORDER ☐ EX PARTE (DOMESTIC RELATIONSHIP) | (B) | CASE NO. 2016-004640-PP |

Court address 990 TERRACE STREET, 3RD FLOOR, MUSKEGON, MI 49442
Court telephone no. 724-6234
ORI MI-

(C) Petitioner's name: Brian J. Priest
Address and telephone no. where court can reach petitioner: 5920 Chandonnet Dr. Muskegon, MI 49444   231-343-5274

Respondent's name, address, telephone no., and DLN: Katherine L. MacPherson   15029 Reid Ct, apt 310   Grand Haven MI 49417

(D) Height 5'2   Weight 100   Race W H   Sex F   Date of birth or age 3/11/80   Hair color Brn   Eye color Brn   Other identifying information

*These items must be filled in for the police/sheriff to enter on LEIN; the other items are not required but are helpful.   **Needed for NCIC entry.

Date: Sept. 22, 2016   Judge: Hon. Kathy L. Hoogstra   ☒ no hearing.   ☐ **after hearing.

☐ 1. A petition requested respondent be prohibited from entry onto the premises, and either the parties are married, petitioner has property interest in the premises, or respondent does not have a property interest in the premises.
☐ 2. Petitioner requested an ex parte order, which should be entered without notice because irreparable injury, loss, or damage will result from the delay required to give notice or notice itself will precipitate adverse action before the order can be issued.
** ☒ 3. Respondent poses a credible threat to the physical safety of the petitioner and/or a child of the petitioner.
☒ 4. Respondent   ☐ **is the spouse or former spouse of the petitioner, had a child in common with the petitioner, or is residing or had resided in the same household as the petitioner.   ☒ has or had a dating relationship with the petitioner.

IT IS ORDERED:
5. Katherine MacPherson is prohibited from:
   ☒ a. entering onto property where petitioner lives.
   ☒ b. entering onto property at 5920 Chandonnet Dr.
** ☒ c. assaulting, attacking, beating, molesting, or wounding Brian Priest
   ☐ d. removing minor children from petitioner who has legal custody, except as allowed by custody or parenting-time order provided removal of the children does not violate other conditions of this order. An existing custody order is dated _____. An existing parenting-time order is dated _____.
** ☒ e. stalking as defined under MCL 750.411h and MCL 750.411i that includes but is not limited to:
       ☒ following petitioner or appearing within his/her sight.   ☒ appearing at petitioner's workplace or residence.
       ☒ sending mail or other communications to petitioner.   ☒ contacting petitioner by telephone.
       ☒ approaching or confronting petitioner in a public place or on private property.
       ☒ entering onto or remaining on property owned, leased, or occupied by petitioner.
       ☒ placing an object on or delivering an object to property owned, leased, or occupied by petitioner.
   ☐ f. interfering with petitioner's efforts to remove his/her children/personal property from premises solely owned/leased by respondent.
** ☒ g. threatening to kill or physically injure Brian Priest
   ☐ h. interfering with petitioner at his/her place of employment or education or engaging in conduct that impairs his/her employment or educational relationship or environment.
   ☐ i. having access to information in records concerning a minor child of petitioner and respondent that will reveal petitioner's address, telephone number, or employment address or that will reveal the child's address or telephone number.
** ☒ j. purchasing or possessing a firearm.
   ☐ k. other: _____
6. As a result of this order, federal and/or state law may prohibit you from possessing or purchasing ammunition or a firearm.
7. Violation of this order subjects respondent to immediate arrest and to the civil and criminal contempt powers of the court. If found guilty, respondent shall be imprisoned for not more than 93 days and may be fined not more than $500.00.
8. **This order is effective when signed, enforceable immediately, and remains in effect until** March 22, 2017. This order is enforceable anywhere in this state by any law enforcement agency when signed by a judge, and upon service, may also be enforced by another state, an Indian tribe, or a territory of the United States. If respondent violates this order in a jurisdiction other than this state, respondent is subject to enforcement and penalties of the state, Indian tribe, or United States territory under whose jurisdiction the violation occurred. MPD, Norton Shores PD, Fruitport PD
9. The court clerk shall file this order with Norton Shores PD, Fruitport PD who will enter it into the LEIN.
10. Respondent may file a motion to modify or terminate this order. For ex parte orders, the motion must be filed within 14 days after being served with or receiving actual notice of the order. Forms and instructions are available from the clerk of court.
11. A motion to extend the order must be filed 3 days before the expiration date in item 8 or a new petition must be filed.

Sept. 22 2016   11:21 am
Date and time issued

Judge

P. 44691
Bar no.

376 (3/12) PERSONAL PROTECTION ORDER (Domestic Relationship)   MCL 600.2950, MCR 3.705, MCR 3.706, 18 USC 922(g)(8)(c)

Approved, SCAO    *Hoekstra*

Original - Court
1st copy - Judge/Assignment clerk (green)
2nd copy - Respondent (blue)
3rd copy - Petitioner (pink)
4th copy - Return (yellow)

| STATE OF MICHIGAN<br>14th JUDICIAL CIRCUIT<br>MUSKEGON COUNTY | PETITION FOR<br>PERSONAL PROTECTION ORDER<br>(DOMESTIC RELATIONSHIP) | CASE NO.<br>2016-004640-PP |
|---|---|---|

Court address: 990 TERRACE STREET, 3RD FLOOR, MUSKEGON, MI 49442
Court telephone no. 724-6234

**(A)** Petitioner's name: Brian J. Priest    Age: 35
Address and telephone no. where court can reach petitioner: 5920 Chandonnet Dr. Muskegon, MI 49444    231-343-5274

v

Respondent's name, address, and telephone no.: Katherine L. MacPherson, 15029 Reid Ct, apt 310, Grand Haven, MI 49417    Age: 36

**(B)** 1. The petitioner and respondent:
☐ are husband and wife.  ☐ were husband and wife.  ☐ have a child in common.
☑ have or had a dating relationship.  ☐ reside or resided in the same household.

**(C)** 2. ☐ The respondent is required to carry a firearm in the course of his/her employment.  ☐ Unknown.

**(D)** 3. a. There ☐ are ☑ are not other pending actions in this or any other court regarding the parties.

| Case number | Name of court, county, and state or province | Name of judge |
|---|---|---|
| | | |

b. There ☐ are ☑ are not orders/judgments entered by this or any other court regarding the parties.

| Case number | Name of court, county, and state or province | Name of judge |
|---|---|---|
| | | |

**(E)** 4. I need a personal protection order because: Explain what has happened (attach additional sheets).

— See addendum —

**(F)** 5. I ask the court to grant a personal protection order prohibiting the respondent from:
☑ a. entering onto the property where I live. I state that either I have a property interest in the premises, I am married to the respondent, or the respondent has no property interest in the premises.
☑ b. entering onto the property at 5920 Chandonnet Dr., Muskegon, MI
☑ c. assaulting, attacking, beating, molesting, or wounding Petitioner
☐ d. removing the minor children from the petitioner who has legal custody, except as allowed by a custody or parenting time order as long as removal of the children does not violate other conditions of the personal protection order.
☑ e. stalking as defined under MCL 750.411h and MCL 750.411i, which includes but is not limited to:
  ☑ following me or appearing within my sight.
  ☑ appearing at my workplace or residence.
  ☑ sending mail or other communications to me.
  ☑ contacting me by telephone.
  ☑ approaching or confronting me in a public place or on private property.
  ☑ entering onto or remaining on property owned, leased, or occupied by me.
  ☑ placing an object on or delivering an object to property owned, leased, or occupied by me.
☐ f. interfering with efforts to remove my children/personal property from premises solely owned/leased by the respondent.
☑ g. threatening to kill or physically injure Petitioner
☑ h. interfering with me at my place of employment or education or engaging in conduct that impairs my employment or educational relationship or environment.
☐ i. having access to information in records concerning a minor child of mine and the respondent that will reveal my address, telephone number, or employment address or that will reveal the child's address or telephone number.
☑ j. purchasing or possessing a firearm.
☐ k. other: _____

**(G)** 6. I make this petition under the authority of MCL 600.2950/MCL 600.2950a and ask the court to grant a personal protection order.
☑ I request an ex parte order because immediate and irreparable injury, loss, or damage will occur between now and a hearing or because notice itself will cause irreparable injury, loss, or damage before the order can be entered.

**(H)** ☐ 7. I have a next friend petitioning for me. I certify that the next friend is not disqualified by statute and is an adult.

**(I)** Date: 9-21-16    Petitioner's/Next friend's signature

MCL 600.2950, MCL 600.2950a, MCR 3.703

CC 375 (4/14) **PETITION FOR PERSONAL PROTECTION ORDER (Domestic Relationship)**

STATE OF MICHIGAN
14TH CIRCUIT COURT FOR THE COUNTY OF MUSKEGON

****************************************************

Brian J. Priest,
Petitioner

File No: 2016-004610-PP

vs

Katherine L. MacPherson
Respondent

**ADDENDUM TO PETITION FOR PERSONAL PROTECTION ORDER**

4. I need a personal protection order because:

   A. WHEN: Oct 2011 – Ongoing

      WHERE: _____

      WHAT: Katherine & I dated for about a month and I broke things off. Since then Katherine constantly tried to contact me. I ended up blocking two email addresses, phone #, and her facebook profile. Katherine kept emailing me. Then last night & this morning Katherine started

   B. WHEN: texting me again on my new

      WHERE: personal phone, and this morning

      WHAT: on my work #. Katherine sent over 20 messages last night + this morning. Katherine told me I needed to pick her up at her house, and gave me her address, and said that her last name better fucking changing to Priest soon, and her also saying

Petitioner
Dated: 9-21-16

Page 1 of 2

2

C.  WHEN: that my current wife Sara
    WHERE: Jo, must die too. Most
    WHAT: of the messages she sent
were pure gibberish, talking about her medication,
lawyer bills/costs. I never answered her messages.

\* I have all the text messages saved

D.  WHEN: Early Sept
    WHERE: My work
    WHAT: a Federal Marshall called me
at work, and wanted to alert me, that I
wasn't the only one she was infauted with,
that she is pursing a judge Yates in Grand
Rapids. This agent wanted me to tell my wife
to watch out for a red car, and Katherine's

E.  WHEN: description. I called him back
    WHERE: today to let him know
    WHAT: about all the recent text
messages.

Petitioner
Dated: 9-21-16

Page 2 of 2

3

C. WHEN: I feel I need a PPO because
WHERE: I am extremely uncomfortable.
WHAT: My wife has been threatened and a US Federal Marshall has alerted me. I don't know what Katherine is capable of, Katherine is very unstable, and now I don't know what she will do. Katherine has also been contacting mutual friends. My friend Joe

D. WHEN: got 29 text messages. threatening
WHERE: him + threatening me.
WHAT: Katherine also stated I better be prepared to spend the rest of my life in prison.

E. WHEN:
WHERE:
WHAT:

Petitioner
Dated: 9-21-16

Approved, SCAO **Pittman**

Original - Court
1st copy - Judge/Assignment clerk (green)
2nd copy - Respondent (blue)
3rd copy - Petitioner (pink)
4th copy - Return (yellow)

| STATE OF MICHIGAN 14 JUDICIAL CIRCUIT MUSKEGON COUNTY | MOTION TO MODIFY, EXTEND, OR TERMINATE PERSONAL PROTECTION ORDER | (A) CASE NO. 16-004640-PP |
|---|---|---|

Court address: 990 TERRACE ST, MUSKEGON, MI 49442
Court telephone no.: (231) 724-6234

(B) Petitioner's name: Brian Priest   Age: 35
Address and telephone no. where court can reach petitioner: 5920 Chandonnet Dr., Muskegon, MI 49444   231.343.5274

v

Respondent's name, address, and telephone no.: Katherine L. MacPherson, 15029 Reid Ct. Apt. 310, Grand Haven, MI 49417   Age: 36

**MOTION**

(C) 1. On **September 22, 2016** a personal protection order was entered by this court.

(D) 2. ☒ a. I am the respondent. I ask the court to conduct a hearing to ☒ modify ☐ terminate the order.
   ☐ b. I am the petitioner. I ask the court to conduct a hearing to modify the order.
   ☐ c. I am the petitioner. I ask the court to ☐ extend ☐ terminate the order.

Explain why you want the order modified, extended, or terminated. If box a. is checked, the respondent must show good cause if the order was issued after a full hearing or if more than 14 days have passed since the order was issued ex parte (without a hearing).

See Addendum - electronically stalked & terrorized
- breached firewall of Judge Yates' chambers
September 2011 - August 2015
- Supreme Court filing
- emergency medical treatment

(E) ☐ 3. I have a next friend motioning for me. I certify that the next friend is not disqualified by statute and is an adult.

(F) Date: **September 26, 2016**

Signature of moving party

P-69159

**NOTICE OF HEARING**

Complete this Notice of Hearing only if you checked box 2.a. or 2.b. above.

(G) You are notified that a hearing has been scheduled to modify, extend, or terminate the personal protection order issued in this case.

Judge: **Gregory C. Pittman P-44791**
Date: **10/17/16**
Time: **2:15 p.m.**
Location: **5th floor, Kobza Hall of Justice**

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

The court can modify, extend, or terminate the order even if you do not attend the hearing. It is important for you to attend.

(H) Date: _____   Signature of moving party: _____

MCL 600.2950, MCL 600.2950a, MCR 3.707
CC 375 (3/12) MOTION TO MODIFY, EXTEND, OR TERMINATE PERSONAL PROTECTION ORDER

16004640-pp-c



Complaint for
Declaratory + Injunctive
Relief

The Law Offices of Katherine L. MacPherso
200 N. Division Avenue • Grand Rapids, MI 49503 • ph 605-321-7955 • fx 616-75

16-004640-PP

**VIA OVERNIGHT MAIL**

Attn: Clerk, Justice Roberts
Chief Justice of United States Supreme Court
United States Supreme Court
Washington, D.C. 20543

Date: October 13, 2015

Re: 2004-2005 Supreme Court Citation,
2008-2009 OSCAR Application Packet,
2009-2010 Hawaii Career Clerkship Offer and Top Secret Security Clearance
2012-2013 Sixth Circuit CJA-Appointments
2014 Jurisdictional Statement, Certiorari Petition, and
***Original § 3 of Article III treason*** case

Dear Justice Roberts:

  The purpose of this cover letter is to provide you with an explanation for the facts, circumstances, actual necessity, and the personal and *extremely* emotional nature of the enclosed filing/affidavit, the documents and evidence attached thereto, as well as the identity of the parties and the case caption, and the specific reason the relief sought can only be requested from, decided, and granted by yourself.

  Briefly summarized, I am, and already was when I was actually permitted to relocate from Seattle, Washington to Oahu in August of 2009 in reliance on the express language of the attached, 62-page, 2009, Judicial Code of Conduct-compliant top secret security clearance application, a ***career*** clerkship offer letter, and my own 2008-2009 OSCAR clerkship application packet, the same, one and *only*: (1) closely related *female* family member of the father of a Navy SEAL (pre-1980-1981) and Daughter of the American Revolution, who was born on 3.11.1980 (2) female member of the Michigan, Eastern District of Michigan, Sixth Circuit (April of 2006, ***private swearing-in ceremony for physical safety-related reasons***), Oregon (February of 2007), Washington (July of 2007), and Ninth Circuit Bar (2007); (3) who further graduated from law school in May of 2005 with academic credentials identical to yourself, a published law review article, and a 2004-2005 Supreme Court citation listed on my resume that my own law school and law review was never informed of, I didn't discover until 2006, and was reviewed by one of your

RECEIVED
OCT 15 2015
OFFICE OF THE CLERK
SUPREME COURT, U.S.

2

former colleagues at Hogan & Hartson (in 1997) Dan Barnhizer, who couldn't explain it to me either at the time, and convinced me to apply for federal clerkships, along with one of Justice Kennedy's law clerks, Lisa (Marshall) Manheim and her husband Nick Manheim in Seattle, Washington and Judge David McKeague, starting in the Fall of 2008.

According to Judge McKeague, I was required to do so *electronically*, via the OSCAR Application System, as opposed to simply emailing him my information.

After almost immediate in-person interviews and offers with Magistrate Judge Barry Garber in Miami (January of 2009, turned down for urban physical safety-related reasons), Judge Tallman in Seattle, and Honolulu in April of 2009 one week apart, I then became the only prospectively hired and intended *career* law clerk to the only other now-*former* (and luckily still alive) *Chief* District Court Judge for the U.S. District Court of *Hawaii*, "H.G.," who was informed of both the *existence* and that I would be taking over responsibility for what I was told was "an espionage case" from the outgoing law clerk for the first time *after* accepting the offer (*United States v. Gowadia*), provided with absolutely no information about the case by anyone at any point, personally interviewed in my *office* in Seattle, Washington, and in the same office building that Lisa and Nick Manheim were in, and vetted down to my own year, airport location (*Ford International Airport* in Grand Rapids, Michigan), and date of birth between May and August of 2009.

I was then informed that I would be approved "with no problems" for what subsequently, and just as otherwise inexplicably beginning in late August of 2011 (three months after the capture and execution of Osama Bin Laden, two years after I relocated from Seattle to Oahu with a Perkins Coie "state of the art" I.T. Department provisioned Blackberry, and almost one year after I relocated from Oahu back home to Grand Rapids, Michigan in September of 2010 for the same personal, family-related reasons necessitating the attached filing), became the most *physically dangerous*, personally, professionally, and financially destructive, and in September of 2014, retroactively incriminating double top secret security clearance in American history.

This further happened while: (1) Justice Stevens was still Supervising Justice for the Sixth Circuit, Justice Kennedy was (and still is) Supervising Justice for the Ninth Circuit, President Obama was in his first term, Justice Kagan was still the (former Dean of Harvard and first female) Solicitor General in American history; (2) I was still working on *In Re: 9/11 Litigation* on behalf of *Boeing* (Global Insurance) and various military and civilian aircraft and appellate matters for the same (and the only) Seattle-based "top" U.S. law firm and world famous Perkins Coie product liability department that recruited me from Grand Rapids, Michigan to specifically work on the case the same year the Firm hired Lisa and Nick Manheim (March of 2007); and (3) I have since learned that the Firm actually represents both *Facebook* and *Google*, and actually had to seek declaratory relief on behalf of Google as to its own First Amendment rights in the FISA Court shortly after ex-NSA contractor Edward Snowden's disclosures beginning on June 5, 2013.

3

### A. Perkins Coie's "state of the art" I.T. Department Provisioned Blackberry, AT&T/Apple iPhone/Google Phone, and Hawaii Clerkship

Second, after relocating from Seattle to Oahu with the same Perkins Coie "state of the art" I.T. Department required and provisioned Blackberry that I was forced to switch to shortly after arriving at the Firm sometime in May of 2007, a long-established (in *August of 2006*) Facebook account that was set up at the insistence of my cousin, Justin Lawrence, whose father is best friends with the father of a Navy SEAL, using the same personal, student Yahoo email address listed on the cover of the security clearance application (katherinelou0311@yahoo.com, required since graduating from high school in June of 1998 for purposes of Federal Financial Aid), becoming personal and Facebook friends with all of my co-clerks, and adding all of their contact information to my Blackberry, I switched to an AT&T/Apple iPhone in January of 2010, the same month H.G.'s assistant, Kelly Lovett, switched to the first Google phone (Android operating system).

Not only did we receive approval from the Court's I.T. Department as to an iPhone application called "Lovettaps" that we also came up with during that time period (December of 2009 through January of 2010), all of the law clerks on Oahu were told that it was okay to log into Facebook and all of their personal online accounts from their work computers (Yahoo, Google, CNN, Wikipedia, Bank of Hawaii, etc.), none of which, were blocked by any type of firewall. At the same time, upon arriving in Honolulu, I learned that H.G. had been diagnosed with the same silent, internal, and potentially **lethal** physical equivalent of treason that required her to fly to California with her husband for emergency medical treatment, step down as Chief Judge, and transfer *Gowadia* to the new Chief Judge, the Honorable Susan Oki Mollway.

Consequently, she didn't return to chambers until sometime in late March or early April of 2010.

In the meantime, after spending Thanksgiving and Christmas either alone and online, or with Ms. Lovett's group of friends, I unexpectedly reconnected with my first love from high school in January of 2010. I then flew from Oahu to Grand Rapids, Michigan (Honolulu International Airport to the Ford International Airport) and interviewed with Judge McKeague in March of 2010 for a clerkship starting in September of 2011 and with the U.S. Attorney's Office for the Western District of Michigan for an appellate specialist position (AUSA Tim Verhey was on the interview panel). Shortly after arriving back home to Kailua, Hawaii, I received a "vetted on sight based on security clearance mutual high school friend with a *Civilian* air traffic controller in Chicago, IL" Facebook friend request from a high school classmate, whose last name is Priest, is mutual high school friends with one of my high school classmates, Joe Thue, which I accepted from my iPhone while standing in my kitchen in Kailua.

As is stated in the attached affidavit, the one and only reason I accepted the request was because I have an *extremely* small high school (Oakridge High School in Muskegon, Michigan), I am aware of what Federal Preemption is because of my work on In Re: 9/11 Litigation, and I was operating under the fundamentally basic assumption that doing so

wouldn't somehow become a threat to my own physical safety later. In June of 2013, Mr. Thue informed me when I specifically asked him in response to ex-NSA contractor Edward Snowden's disclosures that he is required to have a security clearance to be an air traffic controller, but *"only"* for purposes of knowing the location of *Air Force One*.

Upon H.G.'s return to chambers in late March of 2010 or early April, I informed her of my changed relationship status, and she tried to convince me to stay in Hawaii. After approximately two weeks of trying to convince me to stay, inquiring as to whether and why my then-boyfriend couldn't move to Oahu, etc. (which was specifically because he has two young children), H.G. then decided that it would be best for *herself* to convert what was supposed to be a guaranteed two-year minimum term clerkship into a one-year term, flew to Washington D.C. to interview replacement candidates, and I had to scramble to find a new job.

In late August of 2010, the same month Justice Kagan was confirmed, I was *luckily* and just as unexpectedly recruited by a Michigan Circuit Court Judge, the Honorable Christopher P. Yates in Grand Rapids, Michigan to be his first law clerk, assuming he could get the position approved through SCAO. I only recently learned that his ex-wife also happens to be one of Justice Stevens' former law clerks (1992-1993), D.C. Court of Appeals Judge (as of 2011), the Honorable Corinne Beckwith (Yates).

Thus, my clerkship turned out to be (quite literally) one of the most miserable experiences of my professional career, I barely scraped by financially, *and* I was essentially terminated because of a romantic relationship, and was forced to collect Hawaii *state* unemployment between October of 2010 and January of 2011.

### B.   *Capture and Execution of Osama Bin Laden and Electronic Stalking*

Third, on May 1, 2011, five months after I started with and was happily clerking for Judge Yates, Osama Bin Laden was captured and executed. That evening, I received a text message from Ms. Lovett, who is also a female former Marine, that said "We murdered Osama," which I was so hurt and offended by that I didn't respond to it. The next day, Mr. Priest posted a brilliantly written Facebook note about constitutional law, how simultaneously disrespectful to SEAL Team Six, President Obama, and the actual victims who died on September 11, 2001 the reaction of the vast majority of the American public's reaction to that event was. He also told me that he was a writer and was working on a book. That fact, and the above-referenced Facebook note about constitutional law was the only reason I agreed to go out with him. We met for the first time in the home of a retired Secret Service agent in Grand Haven, Michigan, which is on the same hill, overlooking the same beach, pier and one street over from a vacation home owned by Judge McKeague, and he helped me pick out and purchase my first home in Grand Haven, Michigan in June of 2011.

However, in late August of 2011, I began receiving strange double-text messages that were sent to my iPhone, my communications with Mr. Priest were interfered with, and an Air Force officer who I (*very, very* unfortunately) attended law school with, was

permitted to set up a Facebook account from a desert in Afghanistan, sent me a friend request sometime while I was working for Perkins Coie (2007 through 2009), and already personal and Facebook friends with Lisa and Nick Manheim (November of 2007), and convinced me to fly from Grand Rapids, Michigan to Washington D.C. to visit him. While I was waiting to board my flight home to Grand Rapids, Michigan, someone with an Arabic name sent me a text message from a Yahoo email address Abdo_Sayed_008@yahoo.com [Gmail], that said "Someone is burning for you, text reply to find out more."

I was then electronically stalked between September of 2011 through May of 2012 to such an extent that it breached a firewall in Judge Yates' chambers, resulted in what is now the most incriminating I.T. Department-generated list of websites (also attached), I lost my job with Judge Yates and my house as a result of those acts, and moved in with someone who I had just met; specifically, *because* I was both afraid to live alone and could no longer afford the mortgage payments being self-employed.

My *entire* PACER and CM/ECF history and passwords (kmacphers4603) further document those acts, which were further discussed at length with the Sixth Circuit Clerk's Office (Ken Loomis and Bryant Crutcher), with Ms. Lovett, with Perkins Coie, and with an AUSA in Portland, Oregon (Greg Nyhus) between March and May of 2012, but no one could figure out how they were happening. Notably, they included a series of terrifying calls in March of 2012, one of which, I accidentally answered, heard a distorted voice on the other end say "Good-bye," it frightened me so badly that I nearly drove off the road, took a screenshot of the call, and it showed up on my bill the following month as an incoming call from my own phone number, *and* further included an actual *death threat* that was directed at Justice Kagan and was posted publicly on my Facebook page in May of 2012. Furthermore, and specifically *because of* my own age (1980-1981), I also didn't know what to do or who to call (in terms of the FBI, Secret Service, or any other investigative agency).

In January of 2013, my *SIM Card* randomly locked (which I took a screenshot of as well). In February of 2013, I finally emailed Judge McKeague because of those acts, met him for lunch, discussed those acts in-person; specifically, I asked him the following hypothetical: "Let's say you knew a girl, we'll say it's me, who is in love with someone who she is positive is (quote) *CIA or NSA*, but she's been electronically stalked and terrorized to such an extent and doesn't know what to do." He immediately (and correctly) deemed those acts (quote) *"criminal,"* and insisted that I speak with AUSA Tim Verhey (also in-person), which I did a few weeks later (March of 2013). An actual Secret Service agent then contacted me, Agent Bruce Cain, which I was astonished by for the same age-related reasons.

We spoke for over an hour, he set up an actual meeting with me for the following Friday, and just as inexplicably at that time didn't show up for it, so I dropped off an entire flash-drive of screenshots to the local office. Two months later, on May 11, 2013, I attended my grandmother's memorial service, where I met and learned for the first time that my uncle's best friend is the father of a Navy SEAL. Upon describing those acts to him, he became *immediately* concerned, told me that only the NSA has the technological power to deceive a cell phone tower in the manner evidenced on my own cell phone bill, because it

coordinates the communications for the Navy SEALs, instructed me to download the "**Red Phone**" iPhone application and various military security precautions, and told me to contact the Secret Service immediately, to which I responded that I had already done so and was waiting to hear back from the Agent.

Three weeks later, on June 5, 2013 Edward Snowden came forward. Three weeks after that, on June 26, 2013, my own Motion to Withdraw from a Sixth Circuit CJA-appointed case was denied by the Sixth Circuit itself, which further involved a nightmare of factual scenarios and ethical conflicts of interest that put me personally adverse to the same NSA agency that prevailed in *Clapper v. Amnesty International* and required the same now-crime victim to actually argue the ethical conflict of interest and First Amendment chilling effect and fear for myself, my own physical safety and that of Mr. Priest in the opening brief on direct appeal filed in October of 2013. Approximately two weeks later, during the second week of July of 2013, Agent Cain called me back and in what was the single most offensive phone call and statement to the entire life's work, careers, and the actual lives of two Chief Justices, *and* their family members, and all eleven current and retired Justices; and specifically in the "no man is above the law," *United States v. Nixon* context, he said "he wasn't sure a crime had been committed here," but "he couldn't inquire any further UP."

### C.    *Original Separation of Powers Action*

Fourth, in April of 2014, my own appellate brief and speech filed in that case, which was filed on behalf of a **Tennessee** defendant and argued the entirety of the Justices' separation of powers role, Stare Decisis itself, and compliance with the Duty of Candor, was disclosed to a district court judge in **Kentucky** in an entirely different **retained** case and appeal, who issued a sealing order for a **speech** and offered it into evidence to be used in conjunction with a contempt proceeding discussed in the attached filing/affidavit.

As a consequence of those acts, I actually had to seek emergency medical treatment on April 28, 2014 (the bill is attached for that reason as well).

Just as disturbingly, no one at the Supreme Court called me back when I called on April 25, 2014 at the insistence of Professor Barnhizer to inquire as to who my Supervising Justice is, which was part of the reason I had seek emergency medical treatment.

In **September of 2014**, and upon becoming so personally worried about your physical safety, *and* that of every current and retired Justice, their spouses and family members, *and* Lisa and Nick Manheim because of the above-described acts and those in the attached documents, emails and evidence, the case names cited in a timely filed in August of 2014 (and rejected without explanation) Jurisdictional Statement, the questions presented in the resulting Certiorari Petition), and the fact that those acts and "the Government" would have **never in a million years** dared engage in those acts as to Lisa Manheim, I **retroactively** looked up *Gowadia*, the Ninth Circuit opinion for which didn't even become publicly available until July of 2014, and learned for the first time that it was actually an **original § 3 of Article III treason** case about my own former clients' Boeing-

Northrup B-2 Stealth Bomber, which I truly could not believe. Specifically, because that particular aircraft is a silent, invisible, lethal, and legendary for that reason Boeing *Warcraft*, actually is the functional equivalent of an assassin or CIA Agent, Navy SEAL, Sniper, Cancer and Chemotherapy, ineffective assistance by the Secret Service, *and* the NSA, and I would have ***absolutely refused*** to relocate to Oahu to work on that case specifically had I been so-informed of both the facts, parties and subject matter of the case, and the grossly negligent manner in which my computer was left completely unprotected while I was clerking (i.e., no firewall whatsoever).

### D.  Requested Relief

Finally, during the course of drafting the attached filing, I was also informed by the above-referenced Air Force Officer that he knows War Lords in Afghanistan and a human trafficking market where I would fetch a "hefty price," because I also happen to "look just like" Justice Roberts. This was repeated by an already-enlisted Marine, who I also (very, very unfortunately) was forced to attend law school with, can't pass a Bar Exam, failed flight school, and upon informing him around Christmas of 2014 that I actually need a military escort to hand-deliver this document to Justice Roberts.

He then proceeded to inform me that he could also "sell" me and all of my contact information if he wanted to, and gave me the name of one of your former law clerks that he knows as "an acquaintance," Mr. George Hicks, instead of giving me the extension of his superior officer's email address, Sergeant Major James Booker, who is in charge of the entire operation in Afghanistan and can be reached at sergeantmajorbastard@_____.

As a consequence, I spent Christmas of 2014 alone and sobbing thinking about those statements.

Last but certainly not least, between March and May of 2015, Apple admitted that a component of the iPhone operating system that its own executives can't or won't explain permits any application pre-installed or downloaded, and the company itself, to surreptitiously steal and sell the ***entire*** cell phone and email contacts and Facebook friends list from a user without their knowledge, awareness, consent or permission, which violates the express language of the same security clearance application.

During the same time period, additional documents were released and the American public was further informed that between 2009 and 2010, while I was living and clerking on Oahu and was completely dependent on everyone else to inform Justice Kagan about any threats to my own physical safety, operatives from the NSA and GCHQ hacked the largest SIM Card manufacturer in the world, stole the encryption keys for millions of cell phones and SIM Cards for the specific purpose of evading the entirety of the Fourth Amendment, the Warrant requirement and federal judges, and in doing so, compromised the security on all of those cards and devices, ***including those of federal judges.***

Incidentally, I am also now on my third cell phone number, third Facebook page, fifth or sixth email address, and (literally) everyone, including one of my sponsors for purposes of my Supreme Court Admissions certificate, Mr. Frank Stanley, is aware of the

fact that I was stalked to such an extent that I lost my job with Judge Yates (I met Mr. Stanley a few weeks before those events happened), was forced to sell my house, moved in with someone who I had just met, and I am now in need of both money and a safe place to live.

Accordingly, enclosed are three copies of the required filing/affidavit and one copy of all of the exhibits and evidence for your review *first*,[1] and I am respectfully requesting your actual assistance, structural power, protection, and **institutional knowledge**, and that the information set forth therein be disseminated to all eleven current and retired Justices in your discretion. Specifically, I am respectfully requesting:

(1) That you review the attached documents, emails and evidence in their entirety, and determine the monetary value of the 2004-2005 Supreme Court citation, my 2008-2009 OSCAR Application packet, and my actual legal education and life, since the same appellate advocacy that you devoted your life to, which I always wanted to have and be just like you someday, and in fact, stated that desire and intent during *every* interview beginning in law school, including during the same interview that specifically took place in my office in May of 2009 for purposes of the required security clearance, is now considered contempt of "the Government;"

(2) The attached Sixth Circuit CJA vouchers, which **absolutely cannot be** filed **electronically**, decided by any other court or judge, or determined by anyone other than yourself, and needless to say, the $6900 standard rate is *grossly* inadequate to compensate me for a case that has since monopolized almost two years of my life, and resulted in emergency medical treatment;

(3) A determination as to the monetary value and implications of the attached, and what is now just as inexplicably a competing security clearance with Mr. Joe Thue and Mr. Priest, who I have since learned *from a Vietnam veteran* and my co-counsel in one of the cases discussed in the attached filing is required to have a security clearance, specifically, because *Air Force One* is the historically assumed location of a nuclear weapon called a *nuclear football*, which I didn't even known *existed* (once again *because of* my own age), and can apparently only be determined/presided over by a Chief Justice;

(4) A permanent protective order for myself and Mr. Priest issued by the Justices, *personally*, along with any and all additional declaratory and permanent injunctive relief deemed necessary and appropriate by the Justices on behalf of myself and my mother's entire family.

Alternatively, since this involves your exclusive structural jurisdiction and power, which I was actually threatened with by "the Government" and is lethal, I am respectfully requesting a determination on venue or the appointment of a Special Master (should the

---

[1] Per the attached return of service, and because this is both a state and federal matter, I also paid to have Mr. Priest formally served, along with Judge McKeague at his chambers in Lansing, Michigan, and Judge Yates and AUSA Tim Verhey in Grand Rapids, Michigan.

Court determine that there are any questions of fact that need to be resolved). Mr. Stanley is assisting me with this action and can be reached at 616.773.2702 (work), or 616.540.0007 (cell phone).

Very Truly Yours,

200 N. Division Avenue
Grand Rapids, MI 49503
616.438.8787
klmlawoffices@tutanota.com

Case 1:23-cv-00356-HYJ-SJB  ECF No. 1-30, PageID.539  Filed 04/06/23  Page 17 of 19

## AFFIDAVIT OF SERVICE

Now comes, George Nobel II of Paralegal Services of Western Michigan, Inc., 1515 Michigan St. N.E., Suite 119, Grand Rapids, MI 49503 and states as follows: that he is an appointed Court Officer within Kent County to serve process within the State of Michigan and County of Kent.

He states that in October of 2015 he was assigned to deliver four copies of "Leave to Appeal" and attachments to the United States Supreme Court upon four persons as follows:

1. Justice David McKeague, U.S. District Court Judge in the Western District of Michigan, 213 Federal Building, 315 W. Allegan Street, Lansing, MI 48933. Documents were accepted by Clerk Jessica Kraft on Tuesday, October 6, 2015 at 2:38 p.m.
2. Brian Priest, Manager of the AT&T store at 5791 Harvey Street, Norton Shores, MI 49444. He accepted service on Tuesday, October 6, 2015 at 12:50 p.m.
3. United States Assistant Attorney, Tim VerHey, Law Building, 330 Ionia NW, Grand Rapids, MI 49503. Documents were accepted by Heather Wiersma, Legal Assistant, on Thursday, October 8, 2015 at 11:20 a.m.
4. 17th Circuit Court Judge Christopher P. Yates, Suite 11200A, 180 Ottawa Ave. NW, Grand Rapids, MI 49503. Documents were accepted by Wendy White, on Thursday, October 08, 2015 at 11:40 a.m.

Respectfully submitted,

Oct. 13, 2015
Date

George Nobel II
Paralegal Services of Western Michigan, Inc.
1515 Michigan St. NE, Suite 119
Grand Rapids, MI 49503
(616) 451-9141

Subscribed and sworn to before me
This 13th day of October, 2015.

Sarah H. VanDoorne
Notary Public of Kent County, Michigan.
My commission expires: *07/09/2020*.

No. 15-_____

IN THE

# Supreme Court of the United States

IN RE MEMBERS OF THE FEDERAL JUDICIARY,
ANONYMOUS FEDERAL AGENCY EMPLOYEE, and
MEMBER OF THE SUPREME COURT BAR, *Petitioner*

*Ex parte Application, Petition, and Motion for Stay, Habeas Relief, Permanent Injunctive Relief, Transfer, Costs and Attorney Fees, Personal Protection Order, and the Production of Persons, Documents, and Electronically Stored Information for in Camera Inspection*

DIRECTED TO THE HONORABLE JOHN G. ROBERTS
CHIEF JUSTICE OF THE SUPREME COURT AND
CIRCUIT JUSTICE FOR THE FOURTH CIRCUIT