UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATHERINE L. LAWRENCE,

    Plaintiff,

v.

BRIAN J. PRIEST, et al.,

    Defendants.

_____/

Hon. Hala Y. Jarbou

Case No. 1:23-cv-356

**REPORT AND RECOMMENDATION**

Plaintiff Katherine L. Lawrence,[1] a lawyer currently licensed to practice law in Michigan, has filed a pro se complaint against Brian J. Priest—a private citizen—and the United States of America. This case, she asserts, involves her "prior statements, rights, and interests," as well as those of "the federal district court, Sixth Circuit, Ninth Circuit, and Michigan judges identified herein, their current and former law clerks, and their family members." (ECF No. 1 at PageID.1.) She alleges that the Court has jurisdiction over this matter by virtue of her claims under the First, Second, Fourth, Fifth, and Fourteenth Amendments; the Privacy Act; the Foreign Intelligence and Surveillance Act, the Religious Freedom Restoration Act; the Federal Tort Claims Act; Title VII of the Civil Rights Act of 1964; "and all other federal statutes identified in or related to the Plaintiff's career clerkship offer letter and top secret security clearance application attached hereto as E." (*Id.* at PageID.18.) She also invokes the Court's supplemental jurisdiction over her claims pursuant to the Elliott-Larsen Civil Rights Act and other unidentified state-law claims. (*Id.*) For

---

[1] Plaintiff's actual name if Katherine L. MacPherson, but she has filed the action under her mother's maiden name to protect herself from physical harm.

relief, Plaintiff seeks: (1) restoration of her gun rights; (2) a full accounting and assessment of damages; (3) all available injunctive, declaratory, and equitable relief; (4) an order of protection and to allow her to proceed anonymously, if necessary; and (5) consolidation of this case with her February 2023 appeal to the Social Security Administration. (*Id.* at PageID.213.)

Because Plaintiff paid the filing fee, her complaint may not be preliminarily screened pursuant to 28 U.S.C. § 1915(e). However, a court may dismiss an action *sua sponte* "for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Apple v. Glenn*, 183 F.3d 477, 479–80 (6th Cir. 1999); *see also Wagenknecht v. United States*, 533 F.3d 412, 417 (6th Cir. 2008). "A complaint is frivolous when it lacks an arguable basis either in fact or in law," and it "lacks an arguable or rational basis in fact if it describes fantastic or delusional scenarios." *Abner v. SBC Ameritech*, 86 F. App'x 958, 958 (6th Cir. 2004) (quoting *Neitzke v. Williams*, 490 U.S. 319, 325, 327-28 (1989)) (quotation marks omitted). But *sua sponte* dismissal on this basis "is appropriate in only the rarest of circumstances where . . . the complaint is deemed totally implausible." *Apple*, 183 F.3d at 480.

After reviewing Plaintiff's 213-page complaint, with 30 exhibits totaling 328 pages, the question is where to begin. The complaint is not "a short and plain statement of the claim showing that the plaintiff is entitled to relief." Fed. R. Civ. P. 8(a)(2). Instead, it is a lengthy, and often rambling, account of the troubles, travails, obstacles, and difficult relationships Plaintiff has experienced in her life, but particularly focusing on the period between her graduation *summa cum laude* from law school in 2005 and 2015-16. Somewhat briefly, Plaintiff attended Michigan State University College of Law from 2003 to 2005. While attending MSU, Plaintiff authored a law review article that was later cited in a Supreme Court amicus brief. Plaintiff also took a class in

2

federal jurisdiction, taught by then-federal district judge David W. McKeague, who was later elevated to the Sixth Circuit. Following law school, Plaintiff worked in the Grand Rapids office of a Detroit-based law firm for a couple of years. Unfortunately, Plaintiff was sexually assaulted shortly after her graduation in May 2005. In 2006, Judge McKeague and Judge Battani conducted a bar swearing-in ceremony for Plaintiff, which was held in private, apparently due to Plaintiff's concern for her safety. In 2007, Plaintiff relocated to Seattle to join the law firm Perkins Coie as an associate, where she was assigned to work on *In re: 9/11 Litigation* on behalf of Boeing. In 2008, at the urging of Judge McKeague and others, Plaintiff applied for federal clerkships. She eventually obtained a two-year clerkship with the chief judge of the District of Hawaii. Because her duties would entail working on "an espionage case," Plaintiff was required to obtain "a top secret security clearance." Before Plaintiff began her clerkship, the judge became ill and had to step down as chief. The espionage case was thus transferred to the new chief judge and Plaintiff's security clearance was cancelled, so Plaintiff never worked on the espionage case.

    In January 2010, Plaintiff reconnected with David Wing, her first love from high school, on Facebook. After Wing convinced Plaintiff to move back to Michigan, Plaintiff emailed Judge McKeague, who invited her to interview for a clerkship that was to begin in September 2011. During the interview in March or April 2010, Plaintiff told Judge McKeague of her plans to marry Wing. Almost immediately upon her return to Hawaii, Defendant Priest (a high school classmate of Plaintiff and Joe Thue, an air traffic controller), sent Plaintiff a Facebook friend request, which she accepted. After Plaintiff told her judge about her new relationship with Wing, the judge offered Plaintiff the career clerk position, which Plaintiff declined. In July 2010, Plaintiff's judge converted her two-year clerkship to a one-year term. Plaintiff moved back to West Michigan shortly thereafter and accepted an offer from Kent County Circuit Judge Christopher P. Yates to

3

serve as his first law clerk. After Plaintiff began working for Judge Yates, she broke up with Wing due to his anger issues. On May 2, 2011, Plaintiff responded to Defendant Priest's post regarding the execution of Osama Bin Laden. Later that month, Plaintiff and Priest began a romantic relationship. Plaintiff alleges that this relationship continued until September 2011, when Priest told her that he "never intended to disappear from her life forever" and would be back in "four years" (*Id.* at PageID.63–64), while in his September 21, 2016 application for a personal protection order (ECF No. 1-30), which Plaintiff claims was perjured, Priest claimed that they dated only for about one month. (*Id.* at PageID.526.) Over the next several months, with Priest out of her life but not out of her mind, Plaintiff began to suspect that Priest worked for the CIA or the NSA based on certain activity that occurred on her phone and electronic devices and various online accounts. (ECF No. 1 at PageID.74.)

On March 1, 2012—Priest's birthday—her computer in Judge Yates's chambers visited several websites that were blocked by the court's firewall. Plaintiff has no idea how this occurred. On May 21, 2012—the one-year anniversary of Plaintiff's first date with Priest—over Judge Yates's objection, Plaintiff lost her law clerk position based on the March 1, 2012 firewall breach. (*Id.* at PageID.80.) Around that time, Plaintiff learned that Priest had recently begun working for AT&T. Plaintiff alleges AT&T not only was her cell phone provider, but has an extremely close relationship with the NSA. (*Id.* at PageID.78.) Following her departure from Judge Yates's chambers, Plaintiff devoted her time to working on her Sixth Circuit CJA cases. However, that work eventually stopped. (ECF No. 1-1 at PageID.108.) In 2013, Plaintiff posed the following question to Judge McKeague: "Hypothetically, let's say you knew a girl, we'll say it's me, who is in love with someone that she is positive is either CIA or NSA, but she's being electronically stalked and doesn't know what to do. How would she go about finding that information out?"

4

When Judge McKeague asked why, Plaintiff told him about the encrypted language that Priest had taught her through his Facebook page between September 2011 and May 2012, as well as the recent stalking activity on her cell phone. Judge McKeague referred Plaintiff to AUSA Tim Verhey, whom Plaintiff knew from previous contacts. (ECF No. 1 at PageID.86.) Plaintiff's subsequent conversation with AUSA Verhey led to an investigation by Secret Service Agent Bruce Cain in March 2013. Ultimately, Agent Cain dropped the investigation about three weeks after former NSA intelligence contractor Edward Snowden came forward. (*Id.* at PageID.86, 90.)

The complaint contains many, many more facts that are too numerous to mention. Here is one representative example:

> Between October 6-8, 2015, the Plaintiff had the same combination of people from March-August of 2010: Judge McKeague, AUSA Tim Verhey, Defendant Priest, and Judge Yates personally served with a copy of the resulting 100+ page filing that took her an entire year to revise while she was suffering through a nervous breakdown, which was titled: In Re Members of the Judiciary, Anonymous Supreme Court Bar Member, Anonymous Government Agency Employee, explained the exact, sexual assault-related manner in which the Plaintiff was being threatened, and further requested a federally issued PPO for both herself and Mr. Priest. She then met with the same marshals, one of which, Steve Heatherington, who the Plaintiff initially encountered in April-June of 2015, had the copy for Judge McKeague in his hands, said he "didn't get it," and sternly informed her that "federal judges don't like to be served." Then, they funneled her right back to the same parental relationship that she climbed out of her bedroom window to escape from in 1997. After she filed a complaint electronically against the marshals over the patriarchal, sexist manner in which they ignored everything she said, actually asked the Plaintiff "what her relationship with her father was like," but then didn't listen when the Plaintiff specifically told them not to contact her father and further emailed them an exact explanation of the reasons why, they manipulated the Plaintiff's father and advised him on how to get a Britney Spears-style conservatorship in September of 2016, who had her committed when she became suicidal over the perjury set forth in the above-referenced PPO, both of which (the conservatorship and the PPO), toll all applicable statutes of limitations.

(ECF No. 1 at PageID.12–13 (footnote omitted).) In concluding, Plaintiff laments that she "should have just met Mr. Priest, the same pothead 'loser' in high school, married him then, had babies,

and gone to art school for all the good that getting a legal education did her. She would have more rights left than she does now." (*Id.* at PageID.212–13.)

The foregoing material might be appropriate for Plaintiff's forthcoming book she says she is writing, but it provides no basis for a legal claim in this Court against Defendant Priest or the United States. As to the United States, the doctrine of sovereign immunity precludes suit against the United States without its consent. *Lundstrum v. Lyng*, 954 F.2d 1142, 1145 (6th Cir. 1991). A court therefore lacks subject matter jurisdiction over a suit against the United States unless it expressly consents to suit. *United States v. Testan*, 424 U.S. 392, 399 (1976). Here, Plaintiff has not identified a plausibly applicable waiver that would permit the Court to exercise jurisdiction over the United States. The Federal Tort Claims Act does provide a limited waiver of sovereign immunity and vests district courts with subject matter jurisdiction over certain tort claims against the United States, *see Levin v. United States*, 568 U.S. 503, 506 (2013), but Plaintiff has not plausibly alleged that Priest is a federal employee; he works for AT&T. For the same reason, Plaintiff fails to establish a plausible federal claim against Defendant Priest. In addition, as to her claim seeking restoration of her gun rights, Plaintiff has not alleged that she actually attempted to purchase a gun but was denied due to a mental illness or deficiency, nor has she sued the appropriate agency or official(s) that determined that she was not permitted to purchase/own a gun, as in *Tyler v. Hillsdale County Sheriff's Department*, 837 F.3d 678 (6th Cir. 2016). While I am sympathetic to Plaintiff's circumstances, federal courts are courts of limited jurisdiction, and Plaintiff has not identified a cognizable claim against either named Defendant.

Moreover, in light of the foregoing recitation of the complaint allegations, I recommend that the Court dismiss this matter for lack of subject matter jurisdiction under *Apple* on the basis

that the allegations are "totally implausible, attenuated, unsubstantial, frivolous, [and] devoid of merit," 183 F.3d at 47, and deny Plaintiff's motion for protective order (ECF No. 5) as moot.

Date:  April 17, 2023                                              /s/ Sally J. Berens
                                                                   SALLY J. BERENS
                                                                   U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).